WEBB, JUDGE:
The claimants in this case, Lane and Barbara Bohrer, seek an award of damages resulting from the escape of convicted murderer David Edward Williams from the West Virginia Penitentiary in Moundsville. The respondent having stipulated to liability, the Court held a hearing on the 9th day of September, 1997, to determine appropriate damages.
BACKGROUND
The Notice of Claim filed herein arises out of an escape which occurred on February 19, 1992. Three inmates, one of whom was Mr. Williams, had dug a tunnel down from a greenhouse located on prison grounds, some sixteen (16) feet deep and thirty-two (32) feet long under the wall of the prison to make their escape. After escaping, Mr. Williams entered the New Martinsville home of the claimants in the early morning hours of March 6, 1992, and held them hostage at gunpoint and otherwise terrorized them from approximately 2:00 a.m. until 1:00 p.m., on the following day when the claimants were able to make their escape through a window above ground level. Claimant Barbara Bohrer fractured her left knee in the drop from the window, which required surgery and resulted in impaired range of movement and physical activity for Mrs. Bohrer and ensuing effects upon the claimants’ lifestyle. Claimants seek an award for various economic losses, including medical expenses, lost wages and home-care services, as well as pain and suffering, mental anguish, loss of enjoyment of life and loss of consortium.
DISCUSSION
To assess properly the measure of damages, the Court finds it necessary briefly to discuss the events giving rise to this claim. The claimants were married in 1960 and have lived in their New Martinsville home for 31 years. Mr. Bohrer works at ORMET, an aluminum company in Hannibal, Ohio. On the night in question, he was sleeping on the living room floor when he was awakened by David Edward Williams, an escapee from the West Virginia Penitentiary in Moundsville, who had broken into their home and was holding Mr. Bohrer’s .41 caliber magnum handgun pointed at his face. Mr. Williams held him at gunpoint for approximately three hours, while Mrs. Bohrer was asleep in their bedroom. During this three hour period, Mr. Williams threatened and harassed Mr. Bohrer. Thereafter, Mr. Williams instructed him to awaken his wife, and they were ordered to place pillowcases over their heads. Mr. Williams instructed Mrs. Bohrer to cook him some breakfast while having the pillowcase over her head and he continually threatened to kill them both. Thereafter, Mr. Williams tied Mr. Bohrer’s hands and feet and left them in a bedroom with instructions that they were not to move or attempt to leave the room under threat of death. He was going to take a nap in their living room. The claimants made their escape by jumping out of a window in the bedroom when they did not hear any sounds from Mr. Williams for many hours. Apparently, Mr. Williams fled from the Bohrer home in one of their vehicles *19 during that time frame.
The testimony of Mrs. Bohrer reveals the nightmarish hours they passed as hostages in their own home. Mr. Williams repeatedly taunted her with threats. She explained that he appeared to be a mind player. She testified, “He’d come back through the hall and he’d say, ‘Barbara, I have a surprise for you. I have a surprise for you. ’ And you never knew. . . (Y)ou were afraid to even think of what his surprise might be.” After her return from the hospital, that she was unable to remain home alone. “[I] was scared to death, scared to death. I felt his presence in every room.”
The evidence revealed that as a result of this incident Mrs. Bohrer required company around the clock in her home for approximately eight months thereafter. During the day, her mother Wanda Musgrave remained with her and during the evenings, her husband Lane Bohrer was present depending on which shift he worked. Lane Bohrer regularly turned down overtime work to be with his wife because she was afraid to remain home alone.
The testimony in this claim establishes that claimant Barbara Bohrer’s lifestyle has changed significantly in that she is less active and no longer enjoys pastimes such as bowling or golf. The injuries to her leg which occurred when she jumped out of the window to escape from her own home have prevented her from taking part in any of the physical activities which she had previously enjoyed. The evidence was that the fracture was repaired with a screw and Steinman pin and staple. Dr. Edgar Barett, Mrs. Bohrer’s treating orthopedic surgeon, testified that residual effects of her knee injury include post-traumatic arthritis and muscle and ligament weakness. The claimants submitted a number of medical bills relating to treatment of Mrs. Bohrer’s knee. The Court will now address the items of damages separately.
DAMAGES
The claimants submitted the following bills totaling $3,496.33 for medical treatment and other costs:
(a) The hospital bill for treatment of Mrs. Bohrer’s knee amounted to $11,256.91. Of this amount, insurance covered all but $152.00 — the additional cost for Mrs. Bohrer’s private room.
(b) A bill of $71.00 for a new brace, dated April 10, 1992.
(c) A bill of $525.33 for a Medtronic electrical stimulator for Mrs. Bohrer’s knee.
(d) A one-time charge of $98.00 for a visit by a psychologist on March 12, 1992, while Mrs. Bohrer was in the hospital.
(e) Payment of $2,650.00 for a home security system.
The Court finds that all of the aforementioned expenses were reasonable and necessary as a result the incident giving rise to this claim. It appearing that these expenses were borne by claimant Lane Bohrer, the Court makes an award to him in the amount of $3,496.33 for these various economic damages. The Court finds that the payment for a hot tub in the amount of $4,234.70, dated April 13, 1995, some three years after the incident, was not reasonably related to the claim and will be disallowed.
The claimants also seek an award for lost overtime pay and for the value of home care services provided gratuitously by members of Mrs. Bohrer’s family. Mr. Bohrer has declined overtime shifts since March 6, 1992, and he continues to decline these shifts to the present day at his place of employment in order to be home with his wife as she is unable to stay in their home alone after dark. Mr. Bohrer’s regular hourly compensation in 1992 was $13.50 an hour, and his overtime pay would have been approximately $20.25 per hour. Mr. Bohrer documented 54 *20 missed overtime shifts in the five months between March and August 1992. He still regularly declines overtime shifts at least once a week. In addition, the claimants submitted evidence regarding the present value of approximately eight months of home care services provided to Mrs. Bohrer by her mother Wanda Musgrave and other members of the Bohrer family. William Cobb, an economist at Marshall University, is of the opinion that the present value of these services is $24,053.00.
It is the law of West Virginia that claims for damages cannot be proven by speculation or conjecture and that the permanency or future effect of an injury must be proven with reasonable certainty. Jordan vs. Bero, 210 S.E.2d 618 (W.Va. 1974) It is the opinion of the Court that an award for lost overtime and gratuitous home care services is not warranted in this case, as these damages are speculative in nature and their relationship to this claim has not been established with sufficient certainty. The Court notes that the West Virginia Supreme Court of Appeals has previously ruled that an injured person may recover damages for reasonable and necessary home care services, regardless of whether such services are rendered gratuitously or for pay. Kretzer vs. Moses Pontiac Sales, Inc., 201 S.E.2d 275 (W.Va. 1973). While such an award may in some cases constitute a legal obligation, the Court is of the opinion that the State has no moral obligation to make such a award in the present case, as the evidence indicates that these services were rendered voluntarily with no expectation of payment and such an award would constitute a windfall to the claimants.
Finally, the Court turns to the matter of pain and suffering and mental anguish which resulted from this incident. Clearly there can be few events more traumatic than being tied up and held at gunpoint in one’s own home by a convicted murderer under constant and repeated threat of being murdered. This event will be forever seared into the memory of the claimants and will continue to haunt them during the remainder of their lives. Accordingly, the Court finds that claimant Barbara Bohrer is entitled to an award for past and future pain and suffering as there is the strong probability that the claimant will be required to undergo replacement knee surgery in the future. The claimant has also suffered mental anguish and loss of enjoyment of life, for all of which the Court makes a total award in the amount of $100,000.00. The Court further finds that the claimant Lane Bohrer has suffered loss of consortium and loss of enjoyment of life and is entitled to an award of $22,000.00. Accordingly, the Court makes awards to the claimants as provided herein below.
Award of $100,000.00 to Barbara S. Bohrer.
Award of $25,496.33 to Lane S. Bohrer.